# CITATION

**CLL LIMITED PARTNERSHIP LTD**

Versus

**PLAQUEMINES PARISH GOVERNMENT**



Case: **00060305**
Division: **B**
25th Judicial District Court
Parish of Plaquemines
State of Louisiana

To: PLAQUEMINES PARISH GOVERNMENT
THROUGH BILLY NUGESSER ITS CHIEF EXECUTIVE OFFICER OR
IN HIS ABSENCE AN EMPLOYEE THEREOF OF SUITABLE AGE AND DISCRETION
8056 HWY 23 SUITE 200
BELLE CHASSE LA 70037

YOU ARE HEREBY SUMMONED to comply with the demand contained in the Petition of which a true and correct copy (exclusive of exhibits) accompanies this Citation, or make an appearance either by filing a pleading, or otherwise, in the 25th Judicial District Court in and for the Parish of Plaquemines, State of Louisiana, within fifteen (15) days after the service hereof, under the penalty of default.

WITNESS MY OFFICIAL HAND AND SEAL OF OFFICE, at Belle Chasse, Louisiana, on this Tuesday, February 26, 2013.

Req. By:
LISA BRENER
(504)568 1990
PLAINTIFF

Deputy Clerk of Court for
Dorothy M. Lundin, Clerk of Court
P.O. Box 40
Belle Chasse, LA 70037

## Service Information

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20____ served the above named party as follows:

**Personal Service** on the party herein named _____
**Domiciliary Service** on the party herein named by leaving the same at his/her domicile in the parish in the hands of _____, a person apparently over the age of seventeen years, living and residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his/her residence at the time of said service.

Returned:
Parish of _____ this _____ day of _____, 20____.

Service       $ _____
                              By: _____
Mileage      $ _____         Deputy Sheriff

Total          $ _____



[ FILED COPY ]

**DEFENDANT'S EXHIBIT 1**

FOR SERVICE

25TH JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

NUMBER: 60-305            DIVISION B

CLL LIMITED PARTNERSHIP, LTD.

VERSUS

THE PLAQUEMINES PARISH GOVERNMENT

FILED:_____

FILED FEB 26 2013
/S/ BECKY H. KALISZESKI
DEPUTY CLERK

## PETITION FOR DECLARATORY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes CLL LIMITED PARTNERSHIP, LTD., a Nevada limited partnership, made Plaintiff herein, who, with respect represents:

1.

Made Defendant herein is the Plaquemines Parish Government (hereinafter, "the Parish Government"), which is the governing body of Plaquemines Parish, consisting of the Plaquemines Parish Council and the Parish President.

2.

Venue is proper in this Court pursuant to LSA-R.S. 13:5104(B), for the reasons that: (a) Plaquemines Parish is a political subdivision of the 25th Judicial Court; and (b) the causes of action alleged herein arose in Plaquemines Parish.

3.

Plaintiff is the owner of immovable property in Plaquemines Parish, including a tract of land comprised of 743 acres, more or less (hereinafter, "the Borrow Pit Property").

4.

On January 26, 2010, the United States Army Corp of Engineers (hereinafter, "the Corps"), certified the Borrow Pit Property as acceptable for use as a source of contractor-furnished clay material in the construction of federal levees.

1

5.

Pursuant to the Corps' certification of the Borrow Pit Property as an acceptable source of clay material for the construction of federal levees, the site was included by the Corps on its Clay Source List.

6.

The Corps' federal certification of the Borrow Pit Property was the result of an arduous, time-intensive and expensive application process that Plaintiff embarked on in December, 2008, at Defendant's request, who wanted readily available clay material in Plaquemines Parish for the construction of new federal levees in the aftermath of Hurricane Katrina to close the gap in the New Orleans to Venice hurricane protection system, a project for which Congress has appropriated approximately $760,000,000 (hereinafter, "the West Bank NFL Project").

7.

The Corps' application process for federal certification of clay material for use in the new federal levees imposed rigorous requirements on applicants, including Plaintiff, as evidenced by the Corps' "Contractor's Documentation Checklist" (hereinafter, "the Checklist") which identified the information and documents that were required to be included in the submittal package. A copy of the Checklist is attached hereto and made a part hereof by reference, as Exhibit "A".

8.

In order to obtain and provide the information and documents identified on the Checklist and required to be included in the submittal package to the Corps, Plaintiff engaged the services of a professional engineering firm, Cali & LaPlace Engineers, LLC, which worked with Plaintiff over a course of several months to complete the submittal package.

9.

The submittal package presented to the Corps on behalf of Plaintiff consisted of approximately 418 pages, at a cost to Plaintiff of approximately $340,000. By the time the Borrow Pit Property was certified by the Corps, Plaintiff had incurred additional expenses associated with the application process of approximately $40,000, and Plaintiff continues to incur additional expense in maintaining the Corps' certification status of the Borrow Pit Property.

10.

At all times relevant to Plaintiff's decision-making process as to whether it would incur the time, risk and expense of pursuing the Corps' certification of the Borrow Pit Property, and at all times relevant to its preparation of the submittal package and incurrence of expenses in connection therewith, Plaintiff reasonably and correctly believed that the Borrow Pit Property, which was and is a tract of land located in the flood plain, was not and had never been subject to any Plaquemines Parish ordinance relevant to the regulation of borrow pits, including the 1993 and 1995 Borrow Pit Ordinances (Section 18-1, Plaquemines Parish Code of Ordinances), which ordinances regulated and imposed restrictions and obligations on borrow pits located between the Mississippi River and Tributaries Levee System and the Hurricane Protection (Back) Levee System within the Parish of Plaquemines.

11.

The reasonableness and accuracy of Plaintiff's belief and understanding that the Borrow Pit Property was not subject to any Parish regulation are corroborated not only by the clear language of the 1993 and 1995 Borrow Pit Ordinances themselves, but by the actions of the Parish of Plaquemines, which authorized and benefitted by the development of other borrow pits for parish and federal projects on properties formerly owned by Plaintiff and located in the flood plain, without imposing any backfill, reclamation, tax, permit requirement, performance assurances, or any other regulatory obligation on Plaintiff.

12.

On April 23, 2009, less than five months after Defendant requested that Plaintiff apply for federal certification of the Borrow Pit Property, and within a very few weeks of Plaintiffs' substantial completion of the extensive application process, Defendant enacted a new borrow pit ordinance, designated as Ordinance 09-87 (hereinafter, "the 2009 Ordinance"), which ordinance purported to apply to all borrow pits within Plaquemines Parish, regardless of their geographical location.

13.

The Corps, upon learning of the 2009 Ordinance, inquired as to its applicability to the Borrow Pit Property. By letter dated July 9, 2009, the Parish Attorney, Stephen Braud, acknowledged Plaintiff's reliance on its exemption from regulation at the time that Plaintiff

applied to the Corps at great expense to obtain Corps' certification. Further, the Parish Attorney assured the Corps that Plaintiff, as well as certain other borrow pit owners, was not subject to the provisions of the 2009 Ordinance. A copy of the Parish Attorney's July 9, 2009 letter is attached hereto and made a part hereof by reference, as Exhibit "B".

14.

Thereafter, the 2009 Ordinance was held unconstitutional by the 25th Judicial District Court, Parish of Plaquemines, in two cases involving other Parish borrow pit owners, namely, *Scarsdale Lands, LLC, et al. v. The Parish of Plaquemines*, Docket No. 57-598, and *Troy Perez and Jason Cutrer v. Evenstar, Inc., et al.*, Docket No. 55-371.

15.

On December 9, 2010, Defendant, acting through the Parish Council, once again enacted a Borrow Pit Ordinance ("the 2010 Ordinance"), which ordinance purported to regulate all borrow pits in Plaquemines Parish, regardless of geographical location, and additionally required that all borrow pit owners submit an application for a permit to operate the pit.

16.

The 2010 Ordinance, just as the 2009 Ordinance before it, was challenged as unconstitutional in two civil lawsuits titled Levee Materials, L.L.C. v. Plaquemines Parish Government, Docket Nos. 59577 and 59578, and Defendant thereafter agreed to a settlement that resulted in the exemption of the borrow pits at issue in that case from the regulations of the 2010 Ordinance, thereby implying to the community that Defendant acknowledged the fatal Constitutional deficiencies and flaws in the 2010 Ordinance.

17.

On May 10, 2012, the Parish Government and the Corps entered into a Project Partnership Agreement concerning the West Bank NFL Project.

18.

On May 15, 2012, in anticipation of the Corps' immediate need for clay, and believing that it was exempt from any application, permit or backfilling obligation in connection with the operation of the Borrow Pit Property, Plaintiff commenced excavation and processing clay material from the Borrow Pit Property.

19.

Plaintiff has continued its operation of the Borrow Pit Property since May 15, 2012.

20.

Plaintiff submits that it has a vested property right in the Borrow Pit Property.

21.

On December 13, 2012, Defendant enacted a new Borrow Pit Ordinance (Ordinance No. 12-238, "the 2012 Ordinance"), which purports to apply to all borrow pits in the Parish, subject to a few exemptions inapplicable to the Borrow Pit Property (such as small residential projects and certain mineral exploratory activity).

22.

The 2012 Ordinance imposes on all non-exempt borrow pit operators certain obligations and restrictions, which obligations and restrictions, taken as a whole, and to some extent, individually, are so burdensome and/or unreasonable, as to result in an unconstitutional taking and/or interference with Plaintiff's vested property interest in the Borrow Pit Property; further, such obligations and restrictions are not rationally related to a legitimate governmental purpose in violation of the provisions of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the Louisiana Constitution.

23.

The burdensome and/or unreasonable obligations and restrictions include, but are not limited to, the following:

A. An unduly expensive and complex permit application process;

B. A tax on the sale of clay;

C. Restrictions on the proximity of a borrow pit to other structures, which restrictions, if enforced against the Borrow Pit Property, would prevent the full development of the federally certified footprint of the Borrow Pit Property;

D. A requirement that Plaintiff obtain either a letter of credit or performance bond for the period of operations in an amount far in excess of the amount needed to protect any reasonable concerns of the Ordinance; and

E. A continuation of the obligation to maintain a letter of credit or performance bond even following cessation of operation to ensure compliance with permanent fencing

and signage, which obligation will continue in perpetuity, unless the Borrow Pit Property is backfilled.

24.

In addition to the burdensome and unreasonable obligations and restrictions imposed on borrow pits by the 2012 Ordinance, the Ordinance is vague, ambiguous, and susceptible in many aspects to multiple interpretations, including, as a non-exclusive illustration, the fact that the Ordinance grants the Council unlimited discretion to approve or deny permit applications based upon reasons not identified or described in the ordinance.

25.

The 2012 Ordinance requires that "[a]ny person who . . . seeks to continue to excavate or operate a Borrow Pit within the parish" must submit a completed application package within (90) days of the effective date of the ordinance. (Section 18-9(b)). The 2012 Ordinance was effective on December 13, 2012, and the completed application package is therefore due no later than March 13, 2013, if this requirement is enforceable.

26.

The application process, as alleged in Paragraph 23 hereinabove, is unduly burdensome and complex, requiring, inter alia, that the following be attached to the application: a vicinity map indicating locations of all structures, sites, properties or boundaries located within 1500 feet of the borrow pit; a site plan of the property; a traffic route plan; a plan in cross-section showing existing and planned profiles and slopes of affected areas; a detailed reclamation plan, and so on.

27.

Further, the application process, also as alleged in Paragraph 23 hereinabove, is unduly expensive, requiring the payment of up to $10,000.00 to be submitted with the application package, and annually thereafter, together with a $3,000 payment for the Parish's engineer to report and certify the application package.

28.

Plaintiff, as the owner and operator of the Borrow Pit Property, is a person entitled to and does hereby request a declaratory judgment for the determination of all questions of validity, constitutionality, applicability and construction arising under the 2012 Ordinance, and is entitled

to obtain a declaration of rights, status and all other legal relations thereunder. La. Code of Civ. Procedure Arts. 1871, et seq.

29.

Plaintiff submits that, for the reasons set forth hereinabove and such other reasons as may be proven at the trial of this matter, it would be divested of its vested property rights in the Borrow Pit Property and/or its rights therein would be so severely impacted as to constitute an unconstitutional taking thereof, if the 2012 Ordinance were held to be applicable to Plaintiff and the Borrow Pit Property; accordingly, Plaintiff is therefore entitled to and seeks a declaration from this Court that the 2012 Ordinance is inapplicable to it and the CLL Borrow Pit, and/or that Plaintiff and the Borrow Pit Property are exempt from the restrictions and obligations imposed by the 2012 Ordinance.

30.

Plaintiff further submits, additionally and/or alternatively, that the 2012 Ordinance is so vague, ambiguous, susceptible of multiple interpretations, burdensome, overreaching, and unreasonable as to be fatally defective and unconstitutional and/or is not rationally related to a legitimate governmental purpose; accordingly, Plaintiff is therefore entitled to and seeks a declaration from the Court that the 2012 Ordinance is void and unenforceable, and that it be stricken from the Code of Ordinances of Plaquemines Parish.

31.

Plaintiff further submits, additionally and/or alternatively, that Defendant should be equitably estopped from enforcing the restrictions and obligations imposed by the 2012 Ordinance as to Plaintiff and the Borrow Pit Property, for the reason that the facts set forth hereinabove unequivocally prove the following: (A) that Plaintiff relied on Defendant's express and implied representations that the Borrow Pit Property was not subject to the restrictions or obligations under any Parish ordinance, rule or law; (B) that the Borrow Pit Property had been "grandfathered in" for the purpose of operating same for the use of clay material in federal levee projects, and (C) that Plaintiff incurred significant expense, made major business decisions, and commenced operations of the borrow pit, in reliance upon Defendants representations. Accordingly, Plaintiff will sustain severe economic damage if the Borrow Pit Property is subject to the restrictions and obligations imposed by the 2012 Ordinance, and Plaintiff is therefore

entitled to and seeks a declaration from the Court that Defendant is judicially estopped from enforcing the 2012 Ordinance as to Plaintiff, and Plaintiff may proceed with its operations without complying with the restrictions and obligations of the 2012 Ordinance, for the purpose of providing clay material for the federal levee projects.

32.

Plaintiff further requests that the Attorney General of Louisiana be served with a copy of this proceeding and be entitled to be heard as to the allegations of the unconstitutionality of the 2012 Ordinance, as required by La. Code of Civ. Procedure Art. 1880.

**WHEREFORE**, premises considered, Plaintiff, CLL Limited Partnership, Ltd., prays that Defendant be duly cited to appear and answer, and that the Attorney General of Louisiana be served with a copy hereof and be provided with an opportunity to be heard, and that after due proceedings had there be judgment herein, declaring the following:

1. That the application of the 2012 Ordinance to Plaintiff would divest Plaintiff of its vested property rights in the Borrow Pit Property to such an extent as to constitute a taking thereof in violation of the United States and Louisiana Constitutions, and that accordingly, the 2012 Ordinance is inapplicable to Plaintiff and the Borrow Pit Property, and/or that Plaintiff and the Borrow Pit Property are exempt from the restrictions and obligations imposed by the 2012 Ordinance; and/or

2. That the 2012 Ordinance is so vague, ambiguous, susceptible of multiple interpretations, burdensome, overreaching, and unreasonable as to be fatally defective and unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of Louisiana Constitution, and that accordingly, the 2012 Ordinance is void and unenforceable, and that it be stricken from the Code of Ordinances of Plaquemines Parish; and/or

3. That the obligations and restrictions imposed by the 2012 Ordinance are not rationally related to a legitimate governmental purpose and that, accordingly, the Ordinance is fatally defective and unconstitutional under the provisions of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of Louisiana

Constitution, and that accordingly, the 2012 Ordinance is void and unenforceable, and that it be stricken from the Code of Ordinances of Plaquemines Parish; and/or

4. That Defendant is equitably estopped from enforcing the restrictions and obligations imposed by the 2012 Ordinance as to Plaintiff and the Borrow Pit Property, and Plaintiff may proceed with its operations without complying with the restrictions and obligations of the 2012 Ordinance, for the purpose of providing clay material for the federal levee projects; and

5. That Defendant be ordered to pay Plaintiff's attorney fees, and the costs of this proceeding; and

6. For all such other legal and equitable relief to which Plaintiff may be entitled.

Respectfully submitted:

_____
**Lisa Brener #1809**
**S. Frazer Rankin #11112**
**Kimberly K. Hart #33881**
Lugenbuhl, Wheaton, Peck, Rankin
& Hubbard, APLC
601 Poydras St., Suite 2775
New Orleans, LA 70130
Tel: (504) 568-1990
Fax: (504) 310-9195

*Attorneys for CLL Limited Partnership, Ltd.*

**Please Serve:**

The Plaquemines Parish Government

The Attorney General for the State of Louisiana
(Service instructions provided by letter to Clerk)

A TRUE COPY
_____
By, Clerk of Court
Parish of Plaquemines, La.



**US Army Corps
of Engineers**
New Orleans District

# Contractor's Documentation Checklist

### RIGHT OF ENTRY
- Submittal package must include a Right of Entry form signed by the landowner(s).

- If the proposed clay source Point-of-Contact (POC) is not the landowner, then the contractor furnished package should include a document signed by the landowner(s) stating that the POC is acting as an agent of the landowners(s) and has the right to represent the landowner(s) in all Contractor Furnished efforts. In the event the POC is unable to obtain the signature of each landowner, then the POC must submit a letter stating the name, address, and phone number of each landowner and that the POC has the authority of the landowner(s) to represent the landowner(s) in all Contractor Furnished efforts.

### SITE MAP
- Site map should show boundary of property and must include latitudes and longitudes.

### VICINITY MAP
- Vicinity map should use USGS 1:24,000 quad maps as a background and zoomed out enough to show nearest city or town.

### WETLANDS DETERMINATION
- Package must include Corps of Engineers Jurisdictional Determination (JD) letter and map.

- If wetlands are to be impacted, a Section 10/404 permit will be required.

### COASTAL ZONE MANAGEMENT (CZM)
- Package must include a Letter of No Objection or Coastal Use Permit (CUP) from the Louisiana Department of Natural Resources for pits in Louisiana, or respective state agency for other states.

### THREATENED & ENDANGERED SPECIES
- Package must include the consultant's report and a concurrence letter from the U.S. Fish & Wildlife Service.

- The consultant's report must include a map of the studied area with the study area boundary defined by latitudes and longitudes.

EXHIBIT A

## CULTURAL RESOURCE REPORT
- Package must include seven (7) bound copies of a Phase I cultural resource investigation report prepared by a professional cultural resource management (CRM) company.

- The report must include a map of the studied area with the study area boundary defined by latitudes and longitudes.

## ENVIRONMENTAL SITE ASSESSMENT
- Package must include an Environmental Site Assessment (ESA) that shows a low risk of encountering recognized environmental conditions (REC).

- The ESA must conform to ASTM 1527-05 standards.

- The ESA must include a map of the studied area with the study area boundary defined by latitudes and longitudes.

## SOIL BORING ANALYSIS
- Package must include a Geotechnical Report stamped and signed by a licensed civil engineer with a specialization in geotechnical engineering certifying that the proposed source contains suitable material meeting the specifications outlined in our Soil Boring Fact sheet (page 3).

- If a borrow site is within 1,500 feet of the Mississippi River Levee (MRL) or within 300 feet of a Hurricane Protection Levee (HPL), a permit from the local sponsor MUST be included. For additional information regarding this permit, please contact Amy Powell at Amy.E.Powell@usace.army.mil (504) 862-2241 OR Karen Oberlies at Karen.L.Oberlies@usace.army.mil (504) 862-2313.

## AGRONOMY REPORT
- Package must include an agronomy report prepared by a certified agronomist.

## BORROW AREA MANAGEMENT PLAN
- Borrow area management plan must include map that clearly shows access roads and stockpiling & staging areas.

## MITIGATION REQUIREMENTS
- Package must include a written plan and map that describes and shows any areas subject to laws or regulations (Clean Water Act Section 404, Rivers and Harbors Act Section 10, National Historical Preservation Act, HTRW, etc) that hold jurisdiction within the proposed borrow area. Borrow area is defined as to include access routes, loading and unloading facilities, staging areas, etc. Plan and maps must clearly show areas/resources being avoided, areas where any impacts were minimized, and areas where it has been determined that impacts are unavoidable. Resources include, but are not limited to areas of cultural interest, upland forested areas, Wetlands subject Section 404 of the Clean Water Act, any Threatened and Endangered species including any habitat deemed critical by the U.S. Fish and Wildlife

Service, areas found to be hazardous, toxic, or to contain radioactive waste. The U.S. Army Corps of Engineers New Orleans District (CEMVN) Environmental Team Coordinator will determine the consequences of a proposed action on any resources identified on the property in question.

- Plan and maps will be reviewed by CEMVN staff and based upon the judgment of the Environmental Team Coordinator will be accepted or sent back to the party submitting the packet for modification. Once packet is accepted as part of the submittal, it is the responsibility of the person submitting the package to provide written proof that any mitigation deemed necessary by the CEMVN to be a part of the proposed pre-Approved Contractor Furnished borrow site has been accomplished. Proof of mitigation will be supplied prior to final approval of a site being added to pre-Approved Contractor Furnished list that is being maintained by the CEMVN.

- Please note that pre-approved pits may never be utilized. As such, an applicant may want to include appropriate provisions in any compensatory mitigation agreement so that the applicant could recover the investment if the pit is never used.

## SOIL BORING FACTSHEET
- The Geotechnical Report must consist of a summary and conclusion section in the main body of the report with any supporting data attached separately. The licensed engineer shall determine the sub-surface investigations required. These investigations should include but are not limited to continuous soil borings and test pits. Cone Penetrometer tests may also be included to supplement the physical samples and lab testing provided.

- Investigations shall be spaced according to the geotechnical engineer's sub-surface evaluation and be representative of the entire proposed source. The licensed engineer's test plan must provide a comprehensive sampling to at least 5 feet below the bottom of the proposed excavation.

- All soil samples must be classified in accordance with the Unified Soil Classification system. See below for required soil testing. The supporting data attached to the geotechnical report shall be comprehensive and include as a minimum all field logs, soil sampling and testing results, and a detailed investigation location map with the location of the potential borrow source and all investigation locations superimposed. The soil investigation locations must include latitudes and longitudes for plotting purposes.

## LABORATORY TESTS
- Soil classification shall be performed in accordance with the Unified Soil Classification System and ASTM D 2487.

- Atterberg Limits Test shall be performed in accordance with ASTM D 4318.

- Determination of moisture content shall be performed in accordance with ASTM D 2216 or ASTM D 4643.

- Determination of organic content shall be performed in accordance with ASTM D 2974, Method C.

- Control compaction curves shall be established in accordance with ASTM D 698 (Standard Proctor Compaction Tests). A control compaction curve is required for each soil type from each source. Where material is blended and stockpiled, a control compaction curves will be required for each resulting blend of material and will be utilized in lieu of those required for the "unblended materials".

- Sand Content shall be determined by- 200 wash in accordance with ASTM D-1140.

## TEST PROCEDURE FOR BORINGS

- A moisture content determination shall be made and recorded on all samples classified as (CH), (CL), and (ML) at no less than 2 foot intervals.

- For (CH), (CL), and (ML) soils, Atterberg Limits and Organic Content Testing (ASTM D 2974, Method C), is required every 5 feet (minimum).

- Samples with moisture contents at 70% or higher or having a Liquid Limit of 70 or higher must be tested for organic content for that sample as well as for a sample 2 feet above and 2 feet below that sample.

- Sand content tests will be required for samples that classify as CL (with a PI greater than 10) and for all clay samples (CH and CL) with greater than 10% coarse grain materials estimated by visual classification for 2 or more consecutive feet.

- Sand content tests shall be limited to one test every 5 feet of sampling and shall conform to ASTM D1140-00 (#200 sieve required).

- Sand content tests will be required for samples that classify as a ML, but limited to one test every 5 feet of sampling.

**CONTACT:**
Tutashinda Salaam
Project Manager – Borrow
Protection & Restoration Office
U.S. Army Corps of Engineers
New Orleans District
7400 Leake Avenue
New Orleans, LA 70118

504-862-2430  OFFICE
504-862-2109  FAX
tutashinda.salaam@usace.army.mil

# Plaquemines Parish Government

**BILLY NUNGESSER**
Parish President

6035 Hwy. 23, Suite 200
Belle Chasse, LA 70037

(504) 392-6690
(504) 274-2482
1-888-784-5387
Fax: (504) 274-2463

July 9, 2009

Colonel Alvin B. Lee, District Commander
District Engineer, N.O. District
U.S. Army Corps of Engineers
7400 Leake Avenue
New Orleans, LA 70118

Dear Colonel Lee:

In response to the Corps' request regarding the provisions of Plaquemines Parish Code of Ordinances, Art. 1, Chapter 18, Sec. 18-1, recently amended by Council Ordinance No. 09-87, adopted April 23, 2009, this letter serves as the Parish administration's interpretation of Section 18-1 of the Code of Ordinances for Plaquemines Parish, as amended.

The 2009 amendment imposes a backfill requirement on all borrow pits throughout Plaquemines Parish, regardless of the age of any particular borrow pit or its activities prior to the adoption of the amendment and regardless of its location. Prior to the adoption of the amendment, certain requirements for the permitting and backfilling of borrow pits located between the Mississippi River and Tributaries Levee System and the Hurricane Protection (Back) Levee System within the Parish boundaries were established by the adoption of Council Ordinance Nos. 93-31 (1993) and 95-392 (1995).

According to the information in hand, the borrow pits proposed on property owned by CLL Limited Partnership, Ltd and ConocoPhillips, as well as the existing borrow pit on property owned by Plaquemines Dirt & Clay Company, L.L.C., are located outside of the specifically-designated areas set forth in Council Ordinances 93-31 and 95-392.

Applications for the CLL Limited Partnership and ConocoPhillips borrow pits were filed with the Plaquemines Parish Government prior to the adoption of Ordinance No. 09-97, and the Parish Administration determined at that time that the provisions of the borrow pit ordinance did not apply to these applications based on their locations being outside of the hurricane protection levee system.

Relying on the Parish Administration's position, CLL and ConocoPhillips moved forward with applications to the USACE at great expense to obtain USACE approval and certification of the dirt for use on the new Corps levee projects in Plaquemines Parish. It

**EXHIBIT B**

Colonel Alvin B. Lee, District Commander
July 9, 2009
Page 2

is still the Administration's position, regarding the borrow pit ordinance, that all three entities be allowed to move forward and provide Corps-certified material for those levee projects in Plaquemines Parish. There are other pits in the Parish that have been grandfathered in for many years that the Administration also believes are not subject to the provisions of the amended borrow pit ordinance.

If you need any additional information and any clarification on any other pits in Plaquemines Parish that you are considering, please let us know.

Very truly yours,

Stephen C. Braud
Parish Attorney

SCB/rve